**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Richard Kammerer,<br><br>            Plaintiff,<br><br>v.<br><br>PennyMac Loan Services LLC, et al.,<br><br>           Defendants. | No. CV-24-00437-TUC-RM<br><br>**ORDER** |

On August 2, 2024, Plaintiff, proceeding pro se, initiated this action by filing a Complaint in Pima County Superior Court. (Doc. 1-3 at 9-19.)[1] Plaintiff's allegations involve real property purchased by his deceased mother, financed with a loan secured by a deed of trust recorded against the property. (*Id.*; Doc. 6 at 3.) Pennymac Loan Services, LLC ("Defendant" or "Pennymac") was the servicer of the loan at all times relevant to this dispute. (Doc. 1-3 at 9-19; Doc. 6 at 3.)

In his Complaint, Plaintiff alleges that his rights were violated leading up to and following the nonjudicial foreclosure sale of the property to third-party purchaser BDB Capital, LLC, on May 7, 2024. (Doc. 1-3 at 12 ¶¶ 23-24.)[2] Plaintiff brings nine causes of action against Pennymac, the law firm Tiffany & Bosco, P.A., Mark S. Bosco, Leonard McDonald, and BDB Capital, LLC for (1) failing to provide proper notice and process; (2) unfair trade practices; (3) breach of contract; (4) mortgage fraud; (5)

---

[1] All record citations refer to the page numbers generated by the Court's electronic filing system.
[2] On July 2, 2024, the Pima County Superior Court granted Defendant DBD Capital, LLC's Motion for Forcible Entry and Detainer. (Doc. 1-3 at 87.)

infliction of emotional distress; (6) "Claims Against Tiffany & Bosco" and Mark S. Bosco; (7) violations of the Real Estate Settlement Procedures Act; (8) violations of the Fair Debt Collection Practices Act; and (9) "Accountability of the State." (*Id.* at 14 ¶ 38-18 ¶ 82). On August 30, 2024, Defendant Pennymac, the only Defendant to have appeared in this case and to respond to Plaintiff's Complaint, removed the action to this Court based on federal-question jurisdiction. (Doc. 1.)[3]

On September 6, 2024, Pennymac filed a Motion to Dismiss Pursuant to Rule 12(b)(6). (Doc. 6.) On September 19, 2024, this Court issued an Order informing Plaintiff that Defendant had filed the Motion to Dismiss and instructing Plaintiff to respond to the Motion by October 18, 2024. (Doc. 9.) The Order further warned Plaintiff that:

> The failure of Plaintiff to respond to Defendant's Motion to Dismiss (Doc. 6) may, at the discretion of the Court, be deemed a consent to the granting of that Motion without further notice, and judgment may be entered dismissing the complaint and action with prejudice pursuant to LRCiv 7.2(i).

(*Id.* at 2 (citing *Brydges v. Lewis*, 18 F.3d 651 (9th Cir. 1994) (per curiam)).)

On October 3, 2024, Plaintiff filed a Motion for Temporary Restraining Order and to Stay Eviction Proceedings. (Doc. 10.) On October 15, 2024, the Court denied Plaintiff's request for a temporary restraining order and construed the Motion as seeking a preliminary injunction. (Doc. 14.) The Court found that Plaintiff had not described any *future* actions Defendants are expected to take that would cause immediate and irreparable harm, as the eviction Plaintiff sought to prevent had already occurred, and the property had already been sold to a third party. (*Id.* at 2.) In the same Order, the Court noted that Defendant's Motion to Dismiss was also pending and that it had "issued an Order informing Plaintiff of his rights and obligations to respond." (*Id.* at 1, n.1.)

---

[3] Defendant Pennymac does not dispute that it was properly served. (Doc. 1-3 at 7-8; Doc. 1-5 at 2.) There is no evidence in the record that Tiffany & Bosco P.A., Mark S. Bosco, or Leonard McDonald have been properly served. Plaintiff did not submit proof of service on any of these Defendants, and none of them have appeared in this case. Pennymac's Notice of Removal states that counsel for BDB Capital, LLC, Blythe Edmondson, confirmed that BDB Capital, LLC had been served as of August 27, 2024. (Doc. 1 at 3.) However, BDB Capital, LLC, has not appeared in this case, and there is no other indication in the record that it has been served.

1  Defendant responded in opposition to Plaintiff's Motion.  (Doc. 15.)  The Court permitted
2  Plaintiff to file a Reply (Doc. 14 at 3), but he did not do so.
3       On October 25, 2024, Plaintiff filed a Motion to Halt Estate Sale and Enforce
4  Preliminary Injunction Order (Doc. 16), to which Defendant responded in opposition
5  (Doc. 17).  On November 14, 2024, Plaintiff filed a Motion to Enforce Federal
6  Jurisdiction, Void Post-Removal Actions, and for Emergency Injunctive Relief (Doc. 18),
7  to which Defendant responded in opposition (Doc. 19).
8       To date, Plaintiff has failed to respond to Defendant's Motion to Dismiss, request
9  an extension of time to do so, or submit any responsive filing to Defendant's arguments.

## I.   Failure to Respond to Motion to Dismiss

The Court may summarily grant Defendant's Motion to Dismiss and dismiss Plaintiff's Complaint due to Plaintiff's failure to file a response to the Motion to Dismiss. Under Local Rule of Civil Procedure 7.2(i), if an "unrepresented party or counsel does not serve and file the required answering memoranda…such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily."  Before dismissing an action for failure to follow the court's local rules, "the district court is required to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of their merits; and (5) the availability of less drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995).

Here, the *Ghazali* factors favor dismissal.  "[T]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).  Furthermore, Plaintiff's unexplained failure to respond to Pennymac's Motion to Dismiss has interfered with the Court's ability to address the Motion on the merits, has impeded the Court's management of its docket, and has risked delay and prejudice to Defendants.  The Court finds that dismissal without prejudice is appropriate as a less drastic alternative to dismissal with prejudice.

## II. Motion to Dismiss

In the alternative, the Court finds that Defendant's Motion to Dismiss should be granted on the merits.

### A. Standard of Review

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint need not include "detailed factual allegations," it must contain more than labels, conclusions, "and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion to dismiss, the court must take as true all well-pleaded factual allegations of the complaint and construe them in the light most favorable to the nonmovant. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the court need not accept as true legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678.

If the Court "considers evidence outside the pleadings" when ruling on a Rule 12(b)(6) motion to dismiss, the Court "must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment[.]" *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). The Court "may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for

summary judgment." *Id.* at 908.

### B. Discussion

The Court will review each of Plaintiff's claims, and Defendant's arguments concerning those claims, in turn.

#### 1. Count I: Failure to Provide Proper Notice and Process

In Count I, Plaintiff alleges that Pennymac "did not afford Plaintiff the required notice of trustee's sale and failed to follow statutory procedures," in violation of A.R.S. §§ 33-807 and 33-810. (Doc. 1-3 at 14 ¶¶ 38-39.) In its Motion to Dismiss, Defendant argues that this claim should be dismissed because the foreclosure sale was properly noticed. (Doc. 6 at 2, 7-8.)

Plaintiff does not identify which subsections of A.R.S. § 33-807 and A.R.S. § 33-810 Pennymac allegedly violated. A.R.S. § 33-807(D) provides that the "power of sale of trust property conferred upon the trustee shall not be exercised before the ninety-first day after the date of the recording of the notice of the sale." A.R.S. § 33-810 broadly discusses sale by public auction and postponement of the sale. *See id.* § 33-810(B) (explaining that a trustee sale may be postponed provided that the conductor gives "notice of the new date, time and place by public declaration at the time and place last appointed for the sale").

Plaintiff's own allegations indicate that the Notice of Trustee sale was recorded on February 2, 2024, 95 days before the May 7, 2024 foreclosure sale. (Doc. 1-3 at 12 ¶¶ 22-23.) As a result, Plaintiff has failed to allege a violation of A.R.S. § 33-807(D), and his allegations are too vague to support a claim under A.R.S. § 33-810. Therefore, the Court will dismiss Count I of Plaintiff's Complaint.

#### 2. Count II: Unfair Trade Practices

Count II of Plaintiff's Complaint, titled "Unfair Trade Practices," alleges that Defendant "engaged in deceptive acts violating A.R.S. § 44-1522 et seq.," and the "neutral analysis corroborates PennyMac's deceptive handling of documents and lack of adequate response to Plaintiff's compliance." (Doc. 1-3 at 14 ¶¶ 43-47.) In response,

Defendant argues that Plaintiff's claim of unfair trade practices fails because the Arizona Consumer Fraud Act, which Plaintiff cites, does not apply to the nonjudicial foreclosure sale of the property, and the exhibits attached to the Complaint contradict Plaintiff's claims of deceptive tactics. (Doc. 6 at 2, 8-9.)

A.R.S. § 44–1522(A) prohibits deceptive acts "in connection with the sale or advertisement of any merchandise." A consumer loan may be subject to § 44–1522 because "it is the sale of the present use of money on a promise to repay in the future." *Villegas v. Transamerica Fin. Services, Inc.*, 708 P.2d 781, 783 (Ariz. App. 2d Div. 1985) (holding § 44–1522(A) applicable where plaintiffs were subjected to "an oral inducement to take a loan, in which material facts are omitted"). To state a claim under this statute, a plaintiff must allege "(1) a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and (2) a consequent and proximate injury." *Thomas v. Ally Bank*, No. 1 CA-CV 17-0066, 2017 WL 6616620, at *2 (Ariz. App. 1st Div. Dec. 28, 2017) (internal quotations omitted) (holding "[Plaintiff's] allegations did not state a claim under § 44–1522(A)" because he "did not allege fraud in connection with a sale or advertisement of merchandise, but rather in modifying the payment schedule of an existing loan.").

Here, Plaintiff's allegations do not involve the sale or advertisement of a loan. Plaintiff does not claim that Pennymac attempted to induce him into taking a new loan, borrowing more money, or seeking a loan modification. Instead, Plaintiff's Complaint is concerned with Pennymac's conduct during his attempts to be recognized as the successor in interest of an existing loan to which he was not a party. Because Plaintiff has not alleged facts demonstrating that Pennymac's deceptive acts were connected to the sale or advertisement of merchandise, his claim for unfair trade practices fails. *See Davis v. Bank of Am. Corp.*, No. CV 12-01059-PHX-NVW, 2012 WL 3637903, at *4 (D. Ariz. Aug. 23, 2012) (holding that § 44–1522 did not apply where false statements were not made to "induce Plaintiffs to borrow more money" or "to induce Plaintiffs to seek a loan modification," but rather to avoid Home Affordable Modification Program requirements).

### 3. Count III: Breach of Contract

In Count III, Plaintiff alleges that Pennymac "breached its servicing obligations under the mortgage agreement, causing foreclosure fraud." (Doc. 1-3 at 14 ¶ 48 -15 ¶ 52.) Defendant argues that this claim fails because there is no privity of contract between Plaintiff and Pennymac, and the loan was in default at the time of sale. (Doc. 6 at 2, 9-10.)

To assert a claim for personal judgment based on breach of contract, Plaintiff must allege privity of contract between himself and Pennymac. *See Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 530-31 (App. 1984) ("Since there was no privity of contract between appellant and [defendant], appellant has no claim for a personal judgment sounding in breach of contract.") In this case, however, Plaintiff does not allege that he was a party to the loan at issue or deed of trust, nor does he claim to have assumed the loan. As a result, Plaintiff lacks standing to bring a breach of contract claim against Defendant, and Count III must be dismissed.

### 4. Count IV: Consolidated Mortgage and Foreclosure Fraud

In Count IV, Plaintiff alleges that "PennyMac knowingly misrepresented material facts and omitted crucial information related to Plaintiff's status as successor, the foreclosure process, and accessing the mortgage account." (Doc. 1-3 at 15 ¶ 54.) He contends that "PennyMac falsely stated the [power of attorney] would grant access, failed to acknowledge its receipt, and did not inform of the need for a photo ID until just before the auction," thereby facilitating an "improper foreclosure process." (*Id.* at ¶ ¶ 55-57.) Plaintiff contends Pennymac's actions violated A.R.S. § 33-420. (*Id.* at ¶ 58.) In response, Pennymac argues this claim fails because Pennymac did not record any forged documents. (Doc. 6 at 2, 10-11.)

A.R.S. § 33-420, which governs false recordings, provides in relevant part:

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property…

- 7 -

A.R.S. § 33-420(A).

Here, Plaintiff does not allege that Pennymac recorded or forged a power of attorney or any other document. The allegations in the Complaint are too vague and conclusory to establish a claim under A.R.S. § 33-420, particularly considering the heightened fraud standard required by Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) (if the complaint alleges fraud, the plaintiff "must state with particularity the circumstances constituting fraud"). Therefore, the Court will dismiss Count IV.

### 5. Count V: Infliction of Emotional Distress

In Count V, Plaintiff states that "PennyMac's actions caused [him] severe emotional distress" and that he "suffers anxiety, depression, and mental anguish." (Doc. 1-3 at 15 ¶ ¶ 61-64.) Defendant argues that Plaintiff's claim for intentional infliction of emotional distress should be dismissed because he does not allege any outrageous conduct by Defendant or bodily harm. (Doc. 6 at 2, 11-12.)

To state a claim for intentional infliction of emotional distress under Arizona law, a Plaintiff must allege three elements: (1) the defendant engaged in "extreme" and "outrageous" conduct; (2) the defendant "either intended to cause emotional distress or recklessly disregarded the near certainty that such distress [would] result from [its] conduct"; and (3) the plaintiff experienced "severe emotional distress" due to the defendant's conduct. *Citizen Publg. Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005). Additionally, "a claim for negligent infliction of emotional distress requires a showing of bodily harm." *Monaco v. HealthPartners of S. Arizona*, 995 P.2d 735, 738 (Ariz. App. 2d Div. 1999). Bodily harm may include physical injuries or long-term physical or mental illness. *Id.* at 739.

Here, the Complaint lacks sufficient factual support to state a claim for intentional or negligent infliction of emotional distress. Plaintiff's vague and conclusory statements about suffering "anxiety, depression, and mental anguish" are insufficient to support these claims, and Plaintiff does not plausibly allege any outrageous conduct by Defendant. Therefore, Count V will be dismissed.

          **6. Count VI: "Claims Against Tiffany & Bosco"**

In Count VI, Plaintiff alleges that "Tiffany & Bosco, P.A. and Mark S. Bosco contributed to the violations and emotional distress" and "Leonard McDonald recorded a substitution of trustee six months after Lisa J. Johnson's death, falsely stating that she breached the contract." (Doc. 1-3 at 16 ¶ ¶ 66-67.) As explained above, *supra* note 3, the record does not reflect that Tiffany & Bosco, P.A., Mark S. Bosco, and Leonard McDonald have been served. Accordingly, the Court will dismiss Count VI. *See Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (Court lacks personal jurisdiction over a defendant who has not been properly served).

          **7. Count VII: Violations of the Real Estate Settlement Procedures Act ("RESPA")**

Plaintiff alleges in Count VII that Defendant "failed to acknowledge Plaintiff's successor status and respond to Qualified Written Requests (QWRs) as required under RESPA, 12 U.S.C.§ 2605." (Doc. 1-3 at 16 ¶ 70.) Defendant argues this claim fails because Plaintiff lacks standing to assert it. (Doc. 6 at 2, 12-14.)

Under RESPA, a loan servicer is required to respond to a "qualified written request from the borrower…for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). However, "[c]ourts have uniformly barred non-borrowers from asserting RESPA claims." *Aldana v. Bank of Am., N.A.*, No. CV 14-7489-GHK FFMX, 2014 WL 6750276, at *3 (C.D. Cal. Nov. 26, 2014); *see also Mashburn v. Wells Fargo Bank, NA*, No. C11-0179-JCC, 2011 WL 2940363, at *3 (W.D. Wash. July 19, 2011) ("Plaintiff Hayakawa was not a borrower and, thus, was not entitled to receive any disclosures or responses from Defendant under RESPA."); *Thomas v. Guild Mortg. Co.*, No. CV09-2687-PHX-MHM, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) ("A homeowner who is not a party to a mortgage loan cannot assert… RESPA…claims against a lender for improper disclosures.") Furthermore, district courts within the Ninth Circuit "have found that a successor in interest does not assume a borrower's obligations simply upon obtaining title to property when the deed of trust requires an assumption be

made in writing and approved by the lender." *Green v. C. Mortg. Co.*, No. 14-CV-04281-LB, 2015 WL 5157479, at *5 (N.D. Cal. Sept. 2, 2015).

Because Plaintiff is not a borrower and did not assume obligations under the loan, he cannot assert a RESPA claim, and this Count will be dismissed.

### 8. Count VIII: Violations of the Fair Debt Collection Practices Act ("FDCPA")

In Count VIII, Plaintiff's claims that Defendants Pennymac and Tiffany & Bosco "made false, deceptive, and misleading statements violating [the] FDCPA, 15 U.S.C. § 1692e." (Doc. 1-3 at 16 ¶ 73.) He states that "[m]isrepresentations include misstating amounts owed and misleading Plaintiff about his rights." (*Id.* at ¶ 74.) Defendant argues this claim fails because Plaintiff lacks standing to assert it. (Doc. 6 at 2, 14-15.)

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. However, district courts in the Ninth Circuit "regularly find that nonparties to an underlying mortgage loan lack standing to challenge a foreclosure." *Chung v. Bank of New York Mellon Corp.*, No. 822CV01650MCSADS, 2023 WL 2624210, at *3 (C.D. Cal. Feb. 21, 2023) (holding that Plaintiff, who asserted that he was successor in interest to property, lacked standing to bring an FDCPA claim because he was not a party to the loan). Consequently, Plaintiff's FDCPA claim will be dismissed.

### 9. Count IX: "Accountability of the State"

In Count IX, Plaintiff asserts that the "State of Arizona, through its statutes and legal framework, has facilitated the wrongful foreclosure process, thereby failing to protect homeowners' rights adequately." (Doc. 1-3 at 17 ¶ 79.) Furthermore, he claims that "[t]he state's non-judicial foreclosure process violates due process rights guaranteed under the Fourteenth Amendment." (*Id.* at ¶ 80.)

Although Plaintiff includes "Claims Against State Holding State Accountable" in the title of his Complaint, he fails to identify the State of Arizona, or any associated person or entity, as a Defendant in either the case caption or in his list of Defendants. (*Id.*

at 9-10); *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). The record also does not indicate that Plaintiff attempted to serve the State of Arizona in relation to this case. Therefore, the Court will not assume that Plaintiff intended to sue the State of Arizona, nor will it require the State to defend against Plaintiff's claims. As a result, this claim will be dismissed. *See Myles v. United States*, 416 F.3d 551 (7th Cir. 2005) (holding pro se inmate's complaint asserting claims against United States could not be deemed to assert claims against individual federal employees, who had not been served with process or specified in caption).

For the foregoing reasons, the Court will dismiss Plaintiff's Complaint for failure to state a claim, with leave to amend. The Court will deny Defendant's request to dismiss the Complaint without leave to amend. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (in the Ninth Circuit, "[a] pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."). If Plaintiff files an amended complaint, he must cure the deficiencies addressed above.

Because the Court is dismissing Plaintiff's Complaint with leave to amend, and there are therefore no claims currently pending in this action, the Court will dismiss as moot Plaintiff's Motion for Temporary Restraining Order (Doc. 10), Emergency Motion to Compel (Doc. 16), and Motion to Enforce Federal Jurisdiction (Doc. 18). *See Mester v. Martel*, No. 217CV1712KJMACP, 2018 WL 1567833, at *4 (E.D. Cal. Mar. 30, 2018) ("Because the complaint is being dismissed with leave to amend, there are currently no claims pending and the motion for preliminary injunction will therefore be denied as moot.").

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 6) is **granted**. Plaintiff's Complaint (Doc. 1-3) is **dismissed for failure to state a claim**. Within **thirty (30) days** of the date this Order is filed, Plaintiff may file an amended complaint that cures the deficiencies addressed above. If Plaintiff fails to file an amended complaint within thirty days, the Clerk of Court is directed to enter a judgment of dismissal without

1  prejudice and without further notice to Plaintiff.
2      **IT IS FURTHER ORDERED** that all other pending Motions (Docs. 10, 16, 18)
3  are **denied as moot**.
4      Dated this 24th day of March, 2025.

_____
Honorable Rosemary Márquez
United States District Judge