**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Richard Kammerer, | No. CV-24-00437-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| PennyMac Loan Services LLC, et al., | |
| Defendants. | |

Pending before the Court is: Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 28); Defendant's Request for Judicial Notice in Support of Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 28-1); Plaintiff's Motion to Take Judicial Notice (Doc. 33); and Plaintiff's Motion for Temporary Restraining Order (Doc. 34). Plaintiff was informed of his rights and responsibility to respond to Defendant's Motion to Dismiss (Doc. 29), and Plaintiff opposes the Motion (Doc. 30). For the following reasons, Defendant's Motion to Dismiss (Doc. 28) and Request for Judicial Notice (Doc. 28-1) will be granted. Plaintiff's Motion to Take Judicial Notice (Doc. 33) will be denied, and Plaintiff's Motion for Temporary Restraining Order (Doc. 34) will be denied as moot.

## I.    Background

Plaintiff, who is proceeding pro se, initiated this action by filing a Complaint in Pima County Superior Court.   (Doc. 1-3 at 9-19.)[1] On August 30, 2024, Defendant Pennymac Loan Services, LLC ("Pennymac" or "Defendant") removed the case to this

---

[1] All record citations refer to the docket in the above-captioned matter and to the page numbers generated by the Court's electronic filing system.

1    Court.  (Doc. 1.) On March 25, 2025, the Court granted Defendant's initial Motion to

2    Dismiss and dismissed Plaintiff's Complaint for failure to state a claim with leave to

3    amend.  (Doc. 20.)[2]  Plaintiff filed a First Amended Complaint (Doc. 23) and then, with

4    permission, filed the operative Second Amended Complaint ("SAC") (Doc. 27).

5         Plaintiff's allegations involve real property purchased by his mother, financed with

6    a loan secured by a Deed of Trust recorded against the property in 2012. (*See* Docs. 27, 28-

7    1.) Pennymac became the servicer of the loan in 2014. (Doc. 27 at 11.) On April 24, 2023,

8    Plaintiff's mother passed away. (Doc. 27-1 at 5.) Plaintiff notified Pennymac of his

9    mother's passing on May 11, 2023. (Doc. 27 at 14.) In the following months, Plaintiff and

10   Pennymac engaged in various communications with the intent of confirming Plaintiff as a

11   successor in interest to the loan, but the confirmation process was never finalized, as

12   Pennymac never received a copy of Plaintiff's government-issued identification. (Doc. 27-

13   2 at 64-65.) Plaintiff disputes that this requirement was communicated to him, but

14   nonetheless does not allege that he submitted such identification to Pennymac. (*Id.* at 21.)

15        Although the events at this point are not entirely clear, it appears that in the months

16   after Plaintiff's mother's death, no payments were made on the loan. (*See* Doc. 1-3 at 60-

17   63.) On August 4, 2023, however, Plaintiff made a $2,289.05 payment, reflecting the

18   amount that was then due in light of the missed payments. (*Id.*) Pennymac made a note in

19   its servicing records of "Full Cure Obtained," reflecting that at that time, the outstanding

20   payments had been satisfied. (*Id.*) It seems that Plaintiff may have believed as a result that

21   no further payments were due on the loan, and he does not allege that he made any

22   payments after August 4, 2023. (*See* Doc. 27 at 26.) On February 2, 2024, Pennymac

23   caused to be recorded a Notice of Trustee's sale in light of the past-due status of the loan,

24   setting a sale date of May 7, 2024. (Doc. 28-1 at 17.) On May 7, 2024, the nonjudicial

25   foreclosure sale was executed, and BDB Capital, LLC, purchased the property. (Doc. 27 at

26   12.)

27        On June 1, 2024, counsel for BDB Capital, LLC filed an eviction action against

28    

---

[2] Plaintiff did not respond to the Motion to Dismiss despite being warned.  (*See* Doc. 9.)

1   Plaintiff. (Doc. 27-3 at 91.) On July 2, 2024, the Pima County Superior Court granted BDB
2   Capital, LLC's Motion for Forcible Entry and Detainer.  (Doc. 1-3 at 87.) On August 2,
3   2024, Plaintiff filed the present action in state court, and Pennymac removed the case to
4   this Court on August 30, 2024. (Doc. 1 at 1.) On September 26, 2024, the Pima County
5   Sheriff's Department issued to Plaintiff a Notice to Vacate, and Plaintiff was evicted from
6   the property at issue by sheriff's deputies on October 3, 2024. (Doc. 27 at 18.)

7        In the SAC, Plaintiff alleges that his rights were violated leading up to and
8   following the nonjudicial foreclosure sale of the property. (Doc. 27.) Plaintiff names as
9   Defendants Pennymac, the law firm Tiffany & Bosco, P.A., Mark Bosco, Leonard
10  McDonald, and BDB Capital, LLC, CornerConnect Group, LLC, Mike Rhodes, Paul
11  Sorensen, Blythe Edmondson, and the law firm Edmondson & Landon, P.C.[3] Plaintiff
12  seeks declaratory relief, compensatory damages, statutory damages, treble damages for
13  violations of the Racketeering Influenced and Corrupt Organizations Act, punitive
14  damages, injunctive relief, and costs and attorney's fees.

15  **II.    Motions to Take Judicial Notice**

16       Both Plaintiff and Pennymac have filed requests for judicial notice. (Docs. 28-1,
17  33.) The Court will address these requests in turn.

18       A court may take judicial notice of "a fact that is not subject to reasonable dispute"
19  because it is either "generally known within the trial court's territorial jurisdiction" or "can
20  be accurately and readily determined from sources whose accuracy cannot reasonably be
21  questioned." Fed. R. Evid. 201(b). A court may take judicial notice of the fact of a court
22  proceeding or filing as an undisputed matter of public record; however, a court may not
23  take judicial notice of facts subject to reasonable dispute that are stated within court
24  proceedings or filings. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

25       In Pennymac's Request for Judicial Notice in Support of Motion to Dismiss
26  Plaintiff's Second Amended Complaint, Pennymac requests that the Court take judicial

27
28  ---
    [3] Defendant Pennymac does not dispute that it was properly served.  (Doc. 1-3 at 7-8; Doc.
    1-5 at 2.)  No other Defendant appears to have been served; Plaintiff did not submit any
    proof of service, and none of them have appeared in this case.

notice of the Deed of Trust and subsequent Notice of Trustee's sale recorded against Plaintiff's mother's house. (Doc. 28-1.) Each of these documents were recorded in the official records of the Pima County Recorder, and are matters of public record not subject to reasonable dispute. The Court will therefore grant Pennymac's Request for Judicial Notice.

In Plaintiff's Motion for Judicial Notice, Plaintiff requests that the Court take judicial notice of a wide variety of documents. (Doc. 33 at 3.) Plaintiff does not attach any of the documents to his Motion for Judicial Notice. (*See id.*) It appears that the documents are supposed to be included as exhibits to the Second Amended Complaint, but the Court cannot find any of these purported exhibits in the over four hundred pages of material Plaintiff attached to the Second Amended Complaint. As such, the Court will deny Plaintiff's Motion for Judicial Notice.

### III.    Plaintiff's Motion for Temporary Restraining Order

Plaintiff filed a Motion for Temporary Restraining Order on October 3, 2024, seeking to stay eviction proceedings. (Doc. 10.) The Court denied emergency injunctive relief because, based on Plaintiff's own allegations, the eviction Plaintiff sought to prevent had "already occurred, and the property has been sold to a third party." (Doc. 14.) The Court construed Plaintiff's Motion as a Motion for Preliminary Injunction (*id.*), and the Court later denied the Motion as moot based on the dismissal of Plaintiff's Complaint (Doc. 20).

On August 15, 2025, Plaintiff filed another Motion for Temporary Restraining Order, asking the Court to enjoin the sale of the property at issue and eviction actions against Plaintiff. (Doc. 34.) Again, Plaintiff is seeking to enjoin conduct that has already occurred. Furthermore, where a court dismisses a plaintiff's complaint, a pending motion for temporary restraining order becomes moot. *See Meyer v. Fed. Bureau of Investigation*, No. 3:22-CV-1779-SI, 2022 WL 17269643 at *4 (D. Or. Nov. 29, 2022); *Mayhew v. Scharf*, No. CV-10-1439-PHX-GMS, 2010 WL 2891511 at *3 (D. Ariz. July 21, 2010). Because the Court is dismissing Plaintiff's SAC for the reasons that follow, Plaintiff's

1    Motion for Temporary Restraining Order (Doc. 34) will be denied as moot.

2    **IV.    Defendant's Motion to Dismiss**

3          **a.  Standard of Review**

4          A complaint must contain "a short and plain statement of the claim showing that the

5    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal of a complaint, or any claim

6    within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may

7    be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts

8    alleged under a cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534

9    F.3d 1116, 1121 (9th Cir. 2008) (*quoting Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

10   699 (9th Cir. 1990)).  "To survive a motion to dismiss, a complaint must contain sufficient

11   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

12   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

13   544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content

14   that allows the court to draw the reasonable inference that the defendant is liable for the

15   misconduct alleged."  *Id.*    While a complaint need not include "detailed factual

16   allegations," it must contain more than labels, conclusions, "and a formulaic recitation of

17   the elements of a cause of action." *Twombly*, 550 U.S. at 555.  In evaluating a Rule 12(b)(6)

18   motion to dismiss, the court must take as true all well-pleaded factual allegations of the

19   complaint and construe them in the light most favorable to the nonmovant.  *Cousins v.*

20   *Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, the court need not accept as true

21   legal conclusions that are couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

22         As a general rule, the district court may not consider any material beyond the

23   pleadings when resolving a motion to dismiss for failure to state a claim. *Lee v. City of Los*

24   *Angeles*, 250 F.3d 668, 688 (9th Cir. 2002), *impliedly overruled on other grounds as*

25   *discussed in Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1162 n.2 (C.D. Cal. 2002).

26   However, the court may consider material submitted as part of the complaint, such as the

27   documents which Plaintiff has attached to his SAC. *See id.*

28   . . . .

**b. Scope of Permissible Amendment**

As an initial matter, Pennymac contends that Plaintiff's First, Second, Fourth, and Ninth claims fail because they exceed the scope of permissible amendment. (Doc. 28 at 9.) Pennymac argues that since these claims were not previously asserted in the course of this action, Plaintiff may not assert these new theories in his SAC. (*Id.*) The Court finds this argument unpersuasive.

In the cases Pennymac cites to support its position that the SAC exceeds the scope of permissible amendment, each court had specifically instructed the plaintiff that amendment was permitted only to refine existing theories, not to add new ones. *See Coppola v. Smith*, 19 F. Supp. 3d 960, 971 (E.D. Cal. 2014) ("When the Court granted [plaintiff] leave to amend the Fourth Amended Complaint, it did so in order for [plaintiff] to refine and address the identified deficiencies[.]"); *Ward v. Figure Lending LLC*, No. CV-23-08116-PHX-SPL, 2023 WL 8455125 at *2 (D. Ariz. Dec. 6, 2023) ("[T]he Court limited Plaintiff's leave to amend his Complaint to include additional facts to support that his TILA claims are timely[.]").

Here, in its Order granting Plaintiff's Motion for Leave to File Second Amended Complaint, this Court noted that Plaintiff averred that his new complaint would address formatting errors, clarify the factual and legal basis for his claims, and add proper citations to exhibits. (Doc. 26.) The Court did not impose explicit restrictions on the scope of permissible amendment. (*Id.*) It is true that in its Order dismissing Plaintiff's original Complaint, the Court stated that Plaintiff could file an amended complaint "cur[ing] the deficiencies addressed" in the Order. (Doc. 20 at 11.) However, Pennymac consented to the filing of Plaintiff's SAC, and reviewed the proposed copy of the SAC prior to giving such consent. (Doc. 25.) Since Pennymac reviewed the proposed SAC and then consented to its filing, the Court finds that Pennymac suffered no prejudice from Plaintiff's inclusion of additional legal claims.

In light of the absence of prejudice, and because the Court did not clearly grant Plaintiff leave to amend only for a specified purpose, the Court will consider on the merits

1   each of the claims asserted by Plaintiff in his SAC.

2       **c.  Count I: Violation of 28 U.S.C. § 1446(d) – Federal Removal Supremacy**

3           In Count I, Plaintiff alleges that actions taken in a separate state court proceeding

4   after removal of this case to federal court—specifically, the entry of a writ of restitution

5   and his subsequent eviction—violated 28 U.S.C. § 1446(d).  Section 1446(d) provides that

6   once a notice of removal is filed, "the State court shall proceed no further unless and until

7   the case is remanded."

8           This provision, however, applies only to the particular case that was removed; all

9   potentially related state-court proceedings are not automatically halted upon removal of a

10  different case. *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378 (9th Cir. 1997)

11  ("[T]he removal statute only commands the state court to stay the case that was actually

12  removed[.]") (*citing Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d

13  1063, 1069 (8th Cir. 1996)). A federal court exercising its removal jurisdiction may enjoin

14  a separate state court proceeding only where that separate state court proceeding was filed

15  *after removal* for the purpose of subverting federal removal jurisdiction. *Quackenbush*, 121

16  F.3d at 1378 (emphasis added). Here, the separate state court case that Plaintiff believes

17  wrongfully continued after removal was filed *prior* to the removal of this case and was not

18  filed for the purpose of subverting federal removal jurisdiction. (*See* Doc. 27-4 at 96.) Thus,

19  there was no violation of 28 U.S.C. § 1446(d).

20          Moreover, § 1446(d) does not provide a private right of action for damages.  *See*

21  *Saloojas, Inc. v. Aetna Health of California, Inc.*, 80 F.4th 1011, 1015 (9th Cir. 2023)

22  (mandatory statutory language is "not enough to create an implied private right of action";

23  the statute must contain "rights-creating language" with "an unmistakable focus on the

24  individuals protected instead of the person regulated" (internation quotations omitted)).

25          In light of the above, Count I must be dismissed.

26      **d.  Count II: Due Process Violations – 14th Amendment & 42 U.S.C. § 1983**

27          In Count II, Plaintiff alleges violations of 42 U.S.C. § 1983. (Doc. 27 at 20.) Plaintiff

28  appears to allege two theories of liability under this statute. First, Plaintiff argues that the

non-judicial foreclosure system used by Defendant resulted in an unconstitutional deprivation of his property because he was not afforded due process. (*Id.* at 20, 285, 298.) Second, Plaintiff argues that he was denied due process in the state court eviction proceedings stemming from the non-judicial foreclosure. (*Id.* at 20, 61.)

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). When an allegation is brought that a private party was responsible for the complained-of deprivation, the private party must be characterizable as a "state actor." *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 939 (1982). "State action may be found if . . . there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (*citing Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974)).

When a private party acts in accordance with a statute that authorizes behavior but does not encourage, require, or compel it, the actions of that private party are not fairly attributable to the State. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164-65 (1978). The mere enactment by the State of a statute authorizing certain behavior does not mean that all subsequent action undertaken pursuant to that statute is state action. *Id.* ("This Court, however, has never held that a State's mere acquiescence in a private action converts that action into that of the State."); *see also Blum v. Yaretsky*, 457 U.S. 991, 994 (1982) ("[C]onstitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.").

It is well established that non-judicial foreclosure statutes are of the type that merely "permit certain behavior"; such statutes do not "encourage private persons to act in a certain way." *See Charmicor v. Deaner*, 572 F.2d 694, 696 (9th Cir. 1978) (finding no state action in the operation of Nevada's non-judicial foreclosure statute). In the context of non-judicial foreclosure statutes, "there [is] no state action in either the availability of such private

1   remedies or their enforcement." *Apao v. Bank of New York*, 324 F.3d 1091 (9th Cir. 2003);

2   *accord Mildfelt v. Circuit Court of Jackson County*, 827 F.2d 343, 346 (8th Cir. 1987)

3   (finding no state action in non-judicial foreclosure); *Levine v. Stein*, 560 F.2d 1175, 1176

4   (4th Cir. 1977) (same); *Northrip v. Fed. Nat'l Mortg. Ass'n*, 527 F.2d 23, 28–29 (6th Cir.

5   1975) (same); *Barrera v. Security Bldg. & Inv. Corp.*, 519 F.2d 1166, 1174 (5th Cir. 1975)

6   (same); *Bryant v. Jefferson Federal Sav. & Loan Ass'n*, 509 F.2d 511, 513 (D.C. Cir. 1974)

7   (same).

8           Nor does the involvement of a state actor in the execution of a judgment enforcing

9   a non-judicial foreclosure render the creditor a state actor. *See Mira v. Deutsche Bank Tr.*

10  *Co. Americas*, No. CV-25-02640-PHX-SPL, 2025 WL 2373707 at *3 (D. Ariz. Aug. 14,

11  2025); *Northrip*, 527 F.2d at 28 (finding no state action in operation of non-judicial

12  foreclosure statute notwithstanding involvement of sheriff). One who obtains a judgment

13  enforcing a private contractual remedy is not a state actor for § 1983 purposes because

14  "merely resorting to the courts and being on the winning side of a lawsuit does not make a

15  party a co-conspirator or joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 29

16  (1980); *see also Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013)

17  ("Although the court assuredly performs a public purpose, a private individual seeking a

18  remedy from a court is seeking gain for him or herself, a purely private act."). In the non-

19  judicial foreclosure context, the right of a creditor to foreclose on the property arises out of

20  a private contractual agreement, the deed of trust; the power of the state is not the source

21  of the creditor's remedy. *Grady v. Tri-City Nat. Bank*, No. CV 12-2507-PHX-JAT, 2013

22  WL 2147541 at *5 n.6 (D. Ariz. May 15, 2013); *Robinson v. Bank of New York Mellon*,

23  No. CV 10-1829-PHX-FJM, 2011 WL 810658 at *2 (D. Ariz. Mar. 4, 2011) ("[I]n the

24  context of non-judicial foreclosures it is not the power of the state that is being invoked,

25  but rather, the private agreement itself."); *Kenly v. Miracle Props.*, 412 F. Supp. 1072, 1074

26  (D. Ariz. 1976) (same); *In re Nagel*, 245 B.R. 657, 665 (D. Ariz. 1999) (same).

27          Here, Plaintiff's first apparent theory of liability under § 1983—that he was

28  deprived of due process in the course of the non-judicial foreclosure executed by Defendant

Pennymac—fails because Pennymac cannot be considered a state actor. As held by the Ninth Circuit and every Court of Appeals to address the same issue, the mere fact that Pennymac acted in accordance with a non-judicial foreclosure statute does not mean that the State encouraged or directed Pennymac's behavior. Nor does the fact that Pennymac obtained a favorable judgment enforcing its private contractual rights against Plaintiff— and that this judgment was carried out by sheriff's deputies—mean that Pennymac itself can be considered a state actor. Since no state action was involved in Pennymac's conduct, Plaintiff cannot sustain a § 1983 claim against Pennymac. Plaintiff's second apparent theory of liability is that he was denied due process in the state court eviction proceedings stemming from the non-judicial foreclosure. The deputies who carried out Plaintiff's eviction are state actors whose actions may trigger liability under § 1983, but Plaintiff has not named as parties to this lawsuit any sheriff's deputies or any State or local entity responsible for their actions. As such, Plaintiff's second theory also fails.

In sum, Plaintiff has failed to state a claim under 42 U.S.C. § 1983, and Count II must be dismissed.

### e.  Count III: RESPA Violations – 12 U.S.C. § 2605; 12 C.F.R. § 1024

In Count III, Plaintiff alleges violations of regulations promulgated pursuant to the Real Estate Settlement Procedures Act ("RESPA"). (Doc. 27 at 21-22.)

First, Plaintiff alleges that Pennymac "violated 12 C.F.R. § 1024.41(f)-(g) by engaging in 'dual-tracking.'"[4] (*Id.* at 22.) Pennymac argues that Plaintiff has no standing to assert this claim because he is neither a borrower nor a confirmed successor in interest. (Doc. 28 at 10.) 12 C.F.R. § 1024.41(a) specifies that "[a] borrower may enforce the provisions of this section." "Courts have uniformly barred non-borrowers from asserting RESPA claims." *Aldana v. Bank of Am., N.A.*, No. CV 14-7489-GHK FFMX, 2014 WL 6750276, at *3 (C.D. Cal. Nov. 26, 2014). A "confirmed successor in interest," however, "shall be considered a borrower." 12 C.F.R. § 1024.30(d). A "[c]onfirmed successor in

---

[4] "Dual-tracking" is the now-prohibited practice of a loan servicer moving forward with foreclosure while simultaneously working with a borrower to avoid foreclosure. *See* 12 C.F.R. § 1024.41(f).

1    interest means a successor in interest once a servicer has confirmed the successor's identity

2    and ownership interest in a property that secures a mortgage loan." 12 C.F.R. § 1024.31.

3        Here, Plaintiff is not a borrower; he was not a signatory to the loan at issue. (Doc.

4    28-1 at 12.) Nor is Plaintiff a confirmed successor in interest; Pennymac was unable to

5    confirm him because PennyMac never received the documentation—a copy of Plaintiff's

6    government-issued identification—needed to finalize the process. (Doc. 27-2 at 64-65.)

7    Aside from the representation of a Pennymac representative that a copy of Plaintiff's

8    identification was never received (*id.*), Plaintiff alleges that he submitted various other

9    documents needed for the confirmation process, but a copy of his identification is not

10   among them. (Doc. 27 at 21.) Plaintiff's allegations that notices regarding the defaulted

11   loan were addressed to his mother, who had passed away, further demonstrate that

12   Pennymac never confirmed Plaintiff as a successor in interest. (*See* Doc. 27-2 at 8; Doc.

13   27-3 at 83.) Since Plaintiff is neither a borrower nor a confirmed successor in interest, he

14   cannot assert a violation of 12 C.F.R. § 1024.41.

15       Plaintiff's second allegation under RESPA is that Pennymac violated 12 C.F.R. §

16   1024.38, which requires loan servicers to engage in certain procedures upon receiving

17   notice of the death of a borrower. *See* 12 C.F.R. § 1024.38(b)(vi). However, it is well

18   established that there is no private right of action for violations of 12 C.F.R. § 1024.38.

19   *Potter v. Clear Recon Corp.*, No. 2:24-CV-01173-LK, 2025 WL 2223454 at *4 (W.D.

20   Wash. Aug. 5, 2025) (collecting cases); *Moore v. Wells Fargo Bank, N.A.*, No. 22-CV-

21   07310-AMO, 2023 WL 5538268 at *4 (N.D. Cal. Aug. 28, 2023) ("In its final rule

22   adoption, the Consumer Financial Protection Bureau . . . restructured Section 1024.38 so

23   that there would be no private liability for violations of the rule."). As such, Plaintiff's

24   claim under 12 C.F.R. § 1024.38 also fails.

25       In sum, Plaintiff has failed to state a claim under RESPA, and Count III must

26   therefore be dismissed.

27       **f.  Count IV: RICO Violations – 18 U.S.C. § 1962(c)**

28   In Count IV, Plaintiff brings a RICO claim under 18 U.S.C. § 1962(c). "To state a

1  claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through
2  a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th
3  Cir. 2007) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)).

### 1. Enterprise

5          An "enterprise" under RICO is "any individual, partnership, corporation,
6  association, or other legal entity, and any union or group of individuals associated in fact
7  although not a legal entity." 18 U.S.C. § 1961(4). Satisfying this element requires that the
8  plaintiff sufficiently plead that the enterprise had "(A) a common purpose, (B) a structure
9  or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props.*
10 *E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

11         In the Ninth Circuit, the question of whether a common purpose in the RICO
12 enterprise context must be fraudulent is unsettled. *See Singh v. AutoZone Parts, Inc.*, No.
13 2:23-cv-01379-TLN-CSK, 2024 WL 3673063 at *7 (E.D. Cal. Aug. 5, 2024). However, it
14 is agreed that a RICO enterprise cannot be constituted of entities engaged in ordinary
15 commercial activities. *Bai v. CMB Exp. Infrastructure Inv. Grp. 48, LP*, No. 2:24-CV-
16 00807-DJC-SCR, 2025 WL 959099 at *6 (E.D. Cal. Mar. 31, 2025); *Gomez v. Guthy-*
17 *Renker, LLC*, No. EDCV1401425JGBKKX, 2015 WL 4270042 at *9 (C.D. Cal. July 13,
18 2015) ("Courts have overwhelmingly rejected attempts to characterize routine commercial
19 relationships as RICO enterprises.").

20         Here, Plaintiff has failed to adequately plead the existence of an enterprise because
21 there is an absence of facts showing that any common purpose—distinct from a routine
22 commercial relationship—exists amongst the entities he alleges engaged in conduct
23 prohibited by RICO. The enterprise Plaintiff alleges consists of: Pennymac, the mortgage
24 loan servicer; Tiffany & Bosco, the law firm retained to conduct the foreclosure sale of
25 Plaintiff's mother's home; BDB Capital, which acquired the home at the foreclosure sale;
26 CornerConnect Group, LLC, a property manager apparently employed by BDB Capital;
27 and Mike Rhodes and Paul Sorensen, "operational field agents with overlapping roles."
28 (Doc. 27-1 at 44.) Although the foregoing entities and individuals may have worked in

coordination, the retention of a law firm, execution of a foreclosure sale, and employment of a property manager all merely give rise to routine commercial relationships.

Plaintiff alleges that the shared business address of BDB Capital and CornerConnect LLC demonstrates the requisite common purpose, but it is again unclear why sharing an address would alone show the existence of a common purpose distinct from a routine commercial relationship. Plaintiff states that the common purpose of the alleged enterprise was to: "[c]reate conditions for foreclosure," "[s]trip distressed properties of equity," [b]ypass statutory protections like RESPA and federal court removal" and "[p]rofit through rapid resale after dispossession" but Plaintiff alleges no facts nudging "[his] claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Therefore, the Court concludes that Plaintiff has failed to adequately allege the existence of an enterprise, an essential element of Plaintiff's RICO claim.

### 2.  Pattern of Racketeering Activity

Although the Court has concluded that Plaintiff has failed to demonstrate the existence of an enterprise, the Court will also address why Plaintiff has failed to adequately plead the existence of a "pattern" of "racketeering activity," two other essential elements of a RICO claim. The RICO statute defines "racketeering activity" as "any act which is indictable" under many listed provisions of Title 18, United States Code. 18 U.S.C. § 1961(1). To plead a pattern of racketeering activity, a plaintiff must allege that the defendants committed at least two of the statutorily enumerated predicate acts. 18 U.S.C. § 1961(5); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Where RICO claims under 18 U.S.C. § 1962(c) are asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant. *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017).

The first predicate acts of racketeering that Plaintiff alleges that Defendants engaged in are mail fraud and wire fraud. (Doc. 27 at 23; Doc. 27-1 at 45.) Mail and wire fraud are both predicate acts under 18 U.S.C. § 1961(1). Establishing a violation of the wire or mail fraud statutes requires Plaintiff to show that "(1) the defendants formed a scheme or artifice

to defraud; (2) the defendants used the United States [wires or] mails or caused a use of the United States [wires or] mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399–1400 (9th Cir. 1986). Moreover, "the circumstances alleging a cause of action involving fraud must be stated with specificity 'because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Tapang v. Wells Fargo Bank, N.A.*, No. CV-12-02183-LHK, 2012 WL 3778965 at *4 (N.D. Cal. Aug. 30, 2012) (*quoting W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001)).

Many of Plaintiff's allegations regarding mail fraud and wire fraud are conclusory, and the few factual allegations that are included do not tend to show the existence of any element of mail or wire fraud. None of the allegedly wrongful acts Plaintiff describes—Pennymac's various mailings, Pennymac's entries of electronic records, communications from Mike Rhodes—demonstrate the existence of a scheme to defraud. (Doc. 27-1 at 45.) For example, Plaintiff alleges that Pennymac created a "false foreclosure basis" by "alleg[ing] default via mail without documentation" after entering a "Full Cure" notation in its records (*id.*), but as Pennymac correctly points out, "a one-time payment does not amount to an indefinite 'cure' of a mortgage loan with monthly payment obligations." (Doc. 28 at 16.) It appears from the "Notice of Breach or Non-Performance" filed by PennyMac that no payments on the mortgage loan at issue were made after September 1, 2023, and Plaintiff does not dispute this. (*See* Doc. 27; Doc. 28-1 at 19.) Thus, Pennymac's notice of foreclosure was neither "false" nor "without documentation."

Plaintiff also alleges that various Defendants engaged in extortion in violation of 18 U.S.C. § 1951. (Doc. 27 at 24; Doc. 27-1 at 46.) Extortion is a predicate act under 18 U.S.C. § 1961(1). Extortion means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(B)(2). A defendant commits extortion only "where the obtaining of the property would be 'wrongful' because the alleged extortionist has no

lawful claim to that property." *United States v. Enmons*, 410 U.S. 396, 400 (1973).

Here, like his allegations regarding mail and wire fraud, Plaintiff's allegations regarding extortion are vague and conclusory. Plaintiff does not allege that any property—other than the house that was the subject of the foreclosure sale—was taken from him. (*See* Doc. 27-1 at 46.) If the house that was the subject of the foreclosure sale is the property that Plaintiff believes was taken from him for purposes of extortion, Plaintiff's argument fails for two reasons. First, the house was not taken from Plaintiff with his consent; indeed, much of the Second Amended Complaint catalogues Plaintiff's efforts to prevent the foreclosure sale of the house, and even after the foreclosure sale, Plaintiff refused to give the home up until forcibly evicted by sheriff's deputies. (*See* Doc. 27-4 at 109.) Second, Defendants had a lawful claim to the house because the terms of the deed of trust securing the mortgage loan on the house were breached. (Doc. 28-1 at 19.) Thus, although Plaintiff certainly experienced offense in the course of his contentious communications with various Defendants, the actions that Plaintiff alleges do not constitute extortion under the law.

Plaintiff also alleges that various Defendants engaged in obstruction of justice. (Doc. 27 at 23.) Obstruction of justice is a predicate act under 18 U.S.C. § 1961(1). It is unlawful to "corruptly or by threats or force, or by any threatening letter or communication," to influence, obstruct, or impede, or to endeavor to influence, obstruct, or impede, "the due administration of justice[.]" 18 U.S.C. § 1503(a). Plaintiff contends that the continuation of the state court eviction action against him after the removal of this case to federal court demonstrates obstruction of justice, but as discussed above in Section IV(c), the continuation of state court proceedings when a separate case is removed to federal court is not unlawful. Moreover, Plaintiff does not allege facts demonstrating corruption, threats, or any communications that could plausibly be considered an endeavor to impede the administration of justice. (*See* Doc. 27-1 at 46.)

The final predicate act alleged by Plaintiff is bank fraud. (*Id.* at 47.) Bank fraud is a predicate act under 18 U.S.C. § 1961(1). In order to plead bank fraud, Plaintiff must allege that Defendants "execute[d], or attempt[ed] to execute, a scheme or artifice—(1) to defraud

a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises[.]" 18 U.S.C. § 1344. "'It is the financial institution itself . . . that is the victim of the fraud the statute proscribes.'" *United States v. Molinaro*, 11 F.3d 853, 857 (9th Cir. 1993) (*quoting United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992)). Plaintiff does not allege that any financial institution was the intended victim of Defendants' purported scheme. (Doc. 27-1 at 47.) Plaintiff's allegations regarding this predicate act are vague and conclusory, and are insufficient to support a claim for relief.

As Plaintiff has failed to sufficiently allege an instance of racketeering activity under RICO, he has also necessarily failed to sufficiently allege a pattern of such activity. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002). Since Plaintiff has failed to adequately plead the existence of a RICO enterprise, any racketeering activity, or a pattern of such activity—all essential elements of a RICO claim—Plaintiff's RICO claim fails, and Count IV must be dismissed.

### g.  Count V: Breach of Contract

In Count V, Plaintiff asserts a breach of contract claim based on the mortgage agreement executed by his mother, Lisa Johnson. (Doc. 27 at 24.)  To state such a claim under Arizona law, Plaintiff must demonstrate privity of contract.  *Stratton v. Inspiration Consol. Copper Co.*, 683 P.2d 327, 329–30 (Ariz. Ct. App. 1984). And indeed, in the context of wrongful foreclosure claims specifically, the Arizona Supreme Court has stated that a "third party" is precluded from "asserting claims for common law breach of contract." *BT Cap., LLC v. TD Serv. Co. of Arizona*, 275 P.3d 598, 601 (Ariz. 2012); *see also Bornstein v. Nationstar Mortg. LLC*, No. 1 CA-CV 19-0108, 2019 WL 7187286 at *2 (Ariz. Ct. App. Dec. 26, 2019) ("[A]s a non-party to the loan documents, [Plaintiff] lacks standing to assert any breach of contract claim."). Here, Plaintiff was not a party to the contract at issue. (Doc. 28-1 at 12.)

Nonethless, Plaintiff alleges he has standing to enforce the agreement for several

reasons. First, Plaintiff argues that he should be considered a successor under the Deed of Trust, which states that it "shall bind and benefit the successors and assigns of Lender and Borrower" (*Id.* at 9). But as discussed in Section IV(e), Plaintiff concedes that he never completed the process required for confirmation of his status as a successor-in-interest. Furthermore, Plaintiff does not allege that he assumed the mortgage debt, entered into any agreement with Pennymac, or was accepted as a borrower. (*See* Doc. 27.) Therefore, Plaintiff cannot be considered a successor or assignee under the Deed of Trust.

Plaintiff further argues that he has standing as the court-appointed representative of his mother's estate. (*Id.* at 24.) Pro se plaintiffs, however, are prohibited from pursuing claims on behalf of others in a representative capacity, and this prohibition extends to the pursuit of claims on behalf of legal entities such as an estate. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (*citing C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (holding that the privilege to represent oneself afforded by 28 U.S.C. § 1654 did not extend to a trustee attempting to represent a trust pro se); *see also Hawkins v. Kaiser Permanente Sacramento*, No. 2:22-CV-00034-KJM-JDP (PS), 2023 WL 113848 at *2 (E.D. Cal. Jan. 5, 2023) ("While plaintiffs can represent themselves as to any causes of action that belong to them, they may not represent other parties or entities, including the decedent's estate."). Here, since Plaintiff is pursuing his claims pro se, he is limited to litigating causes of action that are personal to himself; he may not bring claims on behalf of his mother's estate.

Finally, Plaintiff argues that Pennymac acknowledged the contractual relationship through its actions, including by accepting one payment from Plaintiff and "continuing account servicing with property inspections and tax payments." (Doc. 27 at 25.) But Arizona's rule that a breach of contract claimant must demonstrate privity of contract contains no exception for acknowledgment of a contractual relationship through behavior. *See Stratton*, 683 P.2d at 329-30. In Arizona, the first essential element of a breach of contract claim is the existence of a contract. *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016). "For an enforceable contract to exist, there must be an offer,

an acceptance, consideration, and sufficient specification of terms" such that the parties' "obligations . . . can be ascertained." *Devers v. LA Mesa RV Ctr., INC.*, No. 1 CA-CV 24-0499, 2025 WL 1711425 at *5 (Ariz. Ct. App. June 19, 2025). Here, there are simply no facts alleged that would show that any kind of contractual relationship existed between Plaintiff and Pennymac.

In sum, Plaintiff has failed to state a claim for breach of contract, and Count V must be dismissed.

### h. Count VI: Wrongful Foreclosure - A.R.S. § 33-807(A)

In Count VI, Plaintiff alleges a violation of A.R.S. § 33-807(A) ("Sale of trust property; power of trustee; foreclosure of trust deed"). Plaintiff alleges that Pennymac violated A.R.S. § 33-807(A) by executing the contested foreclosure sale without legal authority to do so. (Doc. 27 at 26.) The Arizona statutory scheme regulating deeds of trust, however, is clear that all objections to a properly noticed trustee's sale not raised in an action resulting in injunctive relief before 5:00 p.m. on the last business day before the sale are waived. A.R.S. § 33-811(C); *BT Cap., LLC*, 275 P.3d at 600 ("Under this statute, a person who has defenses or objections to a properly noticed trustee's sale has one avenue for challenging the sale: filing for injunctive relief."). Here, the requisite notice of trustee's sale was entered. (Doc. 28-1 at 1.) Since Plaintiff failed to obtain injunctive relief prior to that sale, his objections arising under the Arizona statutes governing deeds of trust are waived.

Even if Plaintiff's objections to the trustee's sale were not waived, it is clear that Plaintiff's allegations do not demonstrate that Pennymac engaged in a violation of A.R.S. § 33-807(A). Plaintiff's argument is that the property at issue was illegally foreclosed upon because the loan secured by the property was not in default. (Doc. 27 at 26.) From what the Court can discern, after Plaintiff's mother's death in April 2023, no payments were made on the loan until August 4, 2023. (*See* Doc. 1-3 at 60-63.) On August 4, 2023, Plaintiff made a $2,289.05 payment, reflecting the amount that was then due in light of the missed payments. (*Id.*) Pennymac made a note in its servicing records of "Full Cure

Obtained," reflecting that *at that time*, the outstanding payments had been satisfied. (*Id.*) Plaintiff does not allege that he made any further payments after August 4, 2023. (*See* Doc. 27 at 26.) Pennymac correctly points out that "a one-time payment does not amount to an indefinite 'cure' of a mortgage loan with monthly payment obligations." (Doc. 28 at 16.) Since the payments due after August 4, 2023, went unpaid, the terms of the deed of trust were breached, and legal authority to execute the trustee's sale existed.

In sum, Plaintiff has failed to state a claim under A.R.S. § 33-807, and Count VI must be dismissed.

### i.   Count VII: FDCPA Violations – 15 U.S.C. § 1692f(6)

In Count VII, Plaintiff alleges a violation of the Fair Debt Collection Practices Act ("FDCPA"). The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

As the Court previously stated in its March 24, 2025 Order, district courts in the Ninth Circuit "regularly find that nonparties to an underlying mortgage loan lack standing to challenge a foreclosure." *Chung v. Bank of New York Mellon Corp.*, No. 822CV01650MCSADS, 2023 WL 2624210, at *3 (C.D. Cal. Feb. 21, 2023) (holding that Plaintiff, who asserted that he was successor in interest to property, lacked standing to bring an FDCPA claim because he was not a party to the loan). A plaintiff lacks standing under the FDCPA when the debt collector never actually sought to collect the debt from the plaintiff. *Santiago v. Bismark Mortg. Co., LLC*, No. 10-00467 SOM/KSC, 2011 WL 839762 at *5 (D. Haw. Mar. 4, 2011); *see also Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014) (holding that statutory standing is required to pursue an FDCPA claim).

In its March 24, 2025 Order, the Court dismissed Plaintiff's FDCPA claim because he is a nonparty to the mortgage loan at issue and no effort was made to collect the debt from him; therefore, he had no standing bring a challenge under the FDCPA. (Doc. 20 at 10.) In his Second Amended Complaint, Plaintiff explains in greater detail what he believes

1    Pennymac and other Defendants did wrong, but he alleges no facts that would correct the

2    defect in standing that caused his original FDCPA claim to be dismissed. (*See* Doc. 27 at

3    27.) Therefore, the Court will dismiss Count VII.

4       **j.   Count VIII: Common Law Fraud**

5       In Count VII, Plaintiff brings a claim of common law fraud. (Doc. 27 at 27-28.) To

6    state such a claim under Arizona law, a plaintiff must show: (1) a representation; (2) its

7    falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth;

8    (5) his intent that it should be acted upon by and in the manner reasonably contemplated;

9    (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely

10   thereon; and (9) his consequent and proximate injury. *Peery v. Hansen*, 585 P.2d 574, 577

11   (Ariz. Ct. App. 1978). "[F]ailure to prove any one of [these elements] is fatal to the cause

12   of action." *Fridenmaker v. Valley Nat. Bank of Arizona*, 534 P.2d 1064, 1068 (Ariz. Ct.

13   App. 1975).

14      Here, Plaintiff does not adequately allege that Pennymac's representations were

15   false, that Pennymac had knowledge of any falsity, or that Pennymac intended for a false

16   representation to be acted upon. (*See* Doc. 27 at 27-28.) Plaintiff makes bare assertions of

17   the foregoing, but the Court need not accept as true legal conclusions that are couched as

18   factual allegations.  *See Iqbal*, 556 U.S. at 678. For example, Plaintiff states "Defendant

19   made multiple false representations," and "Defendants knew these representations were

20   false at the time they were made[.]" (Doc. 27 at 27-28.) On examination of the facts alleged,

21   however, it is simply not plausible that Pennymac made a false representation or had any

22   fraudulent intent.

23      As such, Count VII must be dismissed.

24      **k.   Count IX: Fraudulent Transfer – A.R.S. §§ 44-1004 & 1005**

25      In Count IX, Plaintiff brings a claim of fraudulent transfer under A.R.S. §§ 44-1004

26   & 1005, two provisions of Arizona's version of the Uniform Fraudulent Transfer Act

27   ("UFTA"). Pennymac argues that this claim must fail because this statutory scheme

28   provides rights only to creditors, and Plaintiff cannot be considered a creditor. (Doc. 28 at

17.) "Arizona's version of the UFTA provides rights to creditors against debtors who evade their financial responsibilities." *Farris v. Advantage Cap. Corp.*, 170 P.3d 250, 251 (Ariz. 2007). Under the UFTA, a creditor is a "person who has a claim." A.R.S. § 44–1001(3). The UFTA broadly defines the term "claim" to include "a right to payment[.]" A.R.S. § 44–1001(2). And indeed, the two statutory provisions Plaintiff argues Defendants violated relate to "Transfers fraudulent as to present and future *creditors*," A.R.S. § 44-1004 (emphasis added), and "Transfers fraudulent as to present *creditors*." A.R.S. §§ 44-1005 (emphasis added). But here, Plaintiff cannot be considered a creditor; nothing in the facts alleged suggests he had any right to payment. (*See* Doc. 27.)

As such, Plaintiff has failed to state a claim under A.R.S. §§ 44-1004 & 1005, and Count IX must be dismissed.

## V.    Leave to Amend

Pennymac argues that the Court should deny Plaintiff leave to amend because the deficiencies of Plaintiff's SAC cannot be cured by amendment. (Doc. 28 at 17-18.) Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires."  In determining whether to grant leave to amend, courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Here, Plaintiff has failed to craft a viable complaint despite repeated amendments previously allowed. Plaintiff's SAC repeats many of the same deficiencies that the Court identified and cautioned against in its March 24, 2025 Order dismissing Plaintiff's original Complaint. Furthermore, it is clear that the deficiencies of Plaintiff's SAC cannot be cured through further amendment, because Plaintiff was not a party to the loan at issue, never became a successor in interest, and does not dispute that no payments were made on the loan after August 4, 2023. Because it is clear Plaintiff could not craft a viable complaint if given another opportunity to amend, the Court will dismiss Plaintiff's SAC without further

1    leave to amend.

2           Accordingly,

3           **IT IS ORDERED** that Plaintiff's Motion to take Judicial Notice (Doc. 33) is

4    **denied**, and Plaintiff's Motion for Temporary Restraining Order (Doc. 34) is **denied as**

5    **moot**.

6           **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's

7    Second Amended Complaint (Doc. 28) and Defendant's Request for Judicial Notice (Doc.

8    28-1) are **granted**. Plaintiff's Second Amended Complaint (Doc. 27) is **dismissed with**

9    **prejudice for failure to state a claim**. The Clerk of Court is directed to enter judgment in

10   favor of Defendant and close this case.

11          Dated this 31st day of October, 2025.

12

13

14

15   _____

16          Honorable Rosemary Márquez
            United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28